DISTRICT COURT. JULY 27, 1863.
ADMIRALTY.

## THE EMMA AND CARGO.

1. Proof that an alleged destination is pretended, with absence of papers, is ground of condemnation for violation of blockade.
2. A letter from the claimant of specified property of small value may, with the consent of the District Attorney of the United States, be received and filed as a claim. A liberal practice prevails in this respect in prize cases.

PRIZE.

## CADWALADER, J.

I cannot acquit this vessel and cargo upon the further proof which has been adduced from Baltimore. But I allow to the claimant unlimited further proof on all the points of the case, and allow forty-two days for its adduction. I also allow further proof on behalf of the United States on the question of deviation. Since the former hearings I have looked again at the preparatory proofs. There is no log book. But the want of one seems to be completely supplied by a paper on board, of the following effect

| Lat. by obs. | Lat. by D. R. | Long. by Ac. | Long. by Chronometer. |
|---|---|---|---|
| 25 36 | 25 37 | 75 23 | 75 23 |
| 00 00 | 27 26 | 76 13 | 76 12 |

The absence of any other log is perhaps accounted for in the mate's examination. He says: "I am not a navigator, though I acted as mate." The prize master states that the capture was made in *about* latitude 27° 15' north and longitude 76° west. This does not vary materially from the last point of reckoning on the above-mentioned paper.

The master of the captured vessel states that his course at the time of capture was north northwest, and that he had been on that course about twenty-eight hours. If the course according to the same paper is traced backward this would

correspond with it. And if the course is traced further back to the beginning of the previous day we then find her at a point which might, in the due course of navigation, have been reached if she had on a day earlier taken her departure from a point a little outside of the southern extremity of Eleuthera.

The capture was made on 23d July, 1862. She had, as the captain states, taken in her lading between the 14th and 19th of that month at Nassau, and had afterwards taken some fruit on board at Eleuthera. If she left Nassau on or about the 20th and passed into the Atlantic Ocean by Exuma Sound, her course would have been past the southern end of Eleuthera. She may therefore have taken her departure from the point just beyond it on the 21st, and she might, without any deviation from the professed voyage to Baltimore, have been, on the 22d, at the point of the first reckoning noted on that paper. From this point the course about north northwest mentioned by the captain would, as it seems, have taken her to the place of capture. If this be so, an inquiry will be whether this was a deviation from the course for Baltimore, and with what probable destination. Upon the other inquiry as to the effect of the want of proper papers on board, and as to the bearing of certain evidence on the question of commercial destination for Baltimore, my views were sufficiently expressed at the former hearing.

OCTOBER 26, 1863.

The following supplemental opinion was filed:

In this case, the course of the adventure in question rendered Baltimore a most improbable destination of the cargo. The absence of documents relating to the cargo, particularly the want of an invoice, would, in the case of any voyage, have required explanation.

The course upon which the master deposed that the vessel had been for twenty-eight hours before capture shows, independently of the reckonings upon the piece of paper found

on board, that she must have taken the passage from Nassau round the southeastern extremity of Eleuthera, instead of the passage between that island and Abaco. The reckonings on this paper, which must, in the absence of a log book, be taken as a journal of the voyage, confirm conclusively this inference as to the course of the voyage. This being so, she was, when captured, about fifty miles out of her course to Baltimore, which would have been towards Cape Hatteras. The case was therefore one for either condemnation, or further proof.

The question as to deviation was fully stated in my former opinion. In further explanation on this point, I refer, as part of the present opinion, to the annexed chart showing the track of the vessel. The allowance for further proof twice made, and at this time long extended from the delay of the hearing, has resulted in the production of nothing on the part of the claimants to relieve the case of its doubts. In the meantime fourteen months have elapsed since the capture. The case is a clear one for condemnation.

It is morally and legally certain that the destination was for the blockaded coast.

Vessel and cargo condemned.

## OCTOBER 28, 1863.

THE LETTER of J. W. Gaskill, addressed to the Judge of the Court, is presented and allowed to be filed, subject to all legal exceptions; whereupon

THE JUDGE said:

There was, in this vessel, at the time of her capture, a bag of silver coins amounting to the sum of $177, which were claimed by her master as his private adventure, though he has never interposed what can be technically designated as a claim for them. According to the usual course of practice, a formal claim for the restoration to a master of his private adventure of small value is not necessary, and with the consent, in all cases, of the District Attorney of the United States a very liberal practice on the subject has prevailed.

The practice has been upon an informal application by the master to proceed summarily to an inquiry and decision. The proceeding in most cases has been by way of reference to one of the prize commissioners with a direction to investigate the subject, and a further direction if the application should prove to have been founded in truth to restore the subject of it to the master . . . reporting to the court what may have been done under the reference. This practice appears to be liable to no objection when the subject is of small value.

In the present case the subject is mentioned by the prize master in his affidavit returned by the commissioner. The subject was once mentioned in presence of the District Attorney, when the remark was made, perhaps by the court, that the amount of the silver bore to the value of the vessel and cargo a much greater proportion than had been usual in the cases in which there had been a restitution under summary proceedings according to the above-mentioned practice.

Thus the matter has rested for about two months. I have received from the master a letter dated the 9th instant, from which I learn that he has been and still is in confinement as a prisoner out of the district. The case, if the money is to be restored to him, is one of great hardship from the past and continuing detention of his funds. I have, in other cases, remarked upon the irregularity of epistolary communications to judges. But I have also had occasion to say that in prize cases a necessity for acting upon such communications may sometimes occur. In the present case, the Attorney of the United States consents that the letter may be filed and stand as a claim. Under the circumstances of the case, I allow it so to stand, and refer the application of the claimant to the prize commissioner, Mr. Flanders, to ascertain the facts and report generally upon the subject.